## Hille v. Neale.

[No. 4,793. Filed January 28, 1904.]

DRAINS.—*Repairs.*—*Allotment.*—*Notice.*—An allotment of a ditch for cleaning and repairs, among landowners, by the county surveyor, is invalid under §§5632–5634 Burns 1901, where no notice thereof of any kind was given, and no order was entered confirming such allotment. *pp. 342–348.*

SAME.—*Repairs.*—*Notice.*—The act of 1897 (Acts 1897, p. 137) in which it was provided that allotments for the repair of ditches which were invalid for want of notice may be perfected by subsequent notice applies only to cases where there was an attempt to give the requisite statutory notice, and does not apply where the facts show that no notice of any kind was attempted to be given. *pp. 348–350.*

SAME.—*Invalid Allotment.*—*Acquiescence.*—The voluntary acquiescence for the time being of landowners in an invalid allotment for the repair of a ditch will not bind them in the future as to such invalid allotment. *p. 350.*

SAME.—*Re-allotment.*—*Notice.*—An allotment for repairing a ditch in which due notice was given the landowners affected, according to law, and no remonstrance nor objection was made thereto, is not invalid because an allotment thereof was made the year preceding, where the preceding allotment was void for want of notice. *pp. 350–352.*

DRAINS.—*Notice.*—The name given a particular act does not determine its legal effect, and the fact that a county surveyor's notice to landowners for the allotment of repairs of a ditch contained the word "re-allotment" instead of "allotment" did not invalidate the assessment. *pp. 352-354.*

From Vanderburgh Circuit Court; *H. A. Mattison,* Judge.

Proceeding by Charles Hille against John A. Neale, township trustee, to be relieved from an assessment for cleaning and repairing a ditch. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*Azro Dyer,* for appellant.

*R. D. Richardson* and *D. H. Ortmyer,* for appellee.

COMSTOCK, J.—This proceeding was an agreed case under §562 Burns 1894, §553 R. S. 1881. The following is a substantial copy of the agreed statement of facts: At all the times hereinafter mentioned said Hille and Azro Dyer have been the owners in fee, as tenants in common, of a tract of land in Union township, Vanderburgh county, Indiana, containing 156 acres; said Hille has been the separate owner in fee of another tract of land in said township containing 216 acres; said Dyer has been the separate owner in fee of another tract of land in said township containing eighty acres; Robert J. Stroud has been the owner of another tract of land in said township containing altogether 259 acres; and Helen Stroud, the mother of said Robert J. Stroud, has been the owner of another tract of land in said township containing ninety-four acres. During the year 1898, Long and Duck pond ditch was, by proceedings had in the commissioners' court of said county, duly established in said township, and thereafter, and prior to December 1, 1899, said ditch, having a total length of 22,700 feet, was constructed in accordance with the specifications required in said proceedings, and was accepted as complete by proper county officers. No remonstrance was filed in said proceedings,

and no reviewers were appointed therein. From January 1, 1898, until the 15th day of November, 1900, Robert J. Stroud was continuously the duly elected, qualified, and acting trustee in and for said township, and from said November 15, 1900, until the present time said Neale has been continuously the duly elected, qualified, and acting trustee in and for said township. From January 1, 1899, until the present time Charles C. Genung has been continuously the duly elected, qualified, and acting county surveyor in and for said county. The land owned by said Hille and Dyer as tenants in common was assessed for the construction of said ditch, but the lands owned by them separately were not assessed for the construction of said ditch, nor mentioned in said ditch proceedings. On December 23, 1899, said county surveyor, in writing, made and entered in his book kept for that purpose, and marked Drainage Record No. 1, at page 112 thereof, the following record, to wit: "Allotments for cleaning out and repairing of the Long and Duck pond ditch in Union township, Vanderburgh county, Indiana, under act approved February 28, 1899, made December 23, 1899, by C. C. Genung, county surveyor."

No notice was given by the surveyor to the landowners and parties of allotment according to which the ditch was cleaned out in the year 1900. During said year no day was fixed for hearing remonstrances or objections on the part of the persons affected thereby, and no order was entered by the surveyor confirming or changing said allotment.

Following and under said record entry were recited and described twenty-five tracts of land in said township, the names of the respective owners thereof, and the part or length, in feet, of said ditch to be cleaned out and repaired by said landowners, respectively, as follows, to wit: The land owned by said Hille and Dyer as tenants in common was charged with 3,125 feet thereof in length, the land of

said Robert J. Stroud was charged with 5,128 feet thereof in length, the land of said Helen Stroud was charged with 400 feet thereof in length, and the residue of said ditch was allotted in sections of different lengths to twenty-two other parcels of land in said township, held by other persons and corporations. No assessment was made in or by said record against the land owned by Hille individually, nor the land owned individually by said Dyer. Opposite the description of each tract of land mentioned therein said record recites the number of acres in such tracts which are benefited by said ditch. During the year 1900, and prior to July 30 of that year, said Robert J. Stroud, township trustee, procured from said Genung, county surveyor, a transcript of said surveyor's record of allotments, and before August 1 of that year said trustee fixed a time prior to December 1, 1900, within which each allotment for cleaning out and repairing said ditch should be completed, and duly notified each person, to whose land an allotment had been made, of the time so fixed for the completion thereof, and every person so notified proceeded to perform, and did perform, his allotment within the fixed time in said notice, so that the entire ditch aforesaid was perfectly cleaned out and repaired prior to December 1, 1900, precisely as specified and required by said record of allotments made by the surveyor December 23, 1899. On the 26th day of March, 1901, said county surveyor made and entered in said Drainage Record No. 1, at page 123 thereof, the following record entry, to wit: "Re-allotments for cleaning out and repairing of the Long and Duck pond ditch, in Vanderburgh county, Indiana, under act approved February 28, 1899, made March 26, 1901, by C. C. Genung, county surveyor."

Following and under said record was recited and described twenty-five tracts of land in said township, the names of the respective owners thereof, and the length, in

feet, of said ditch to be cleaned out and repaired by said landowners, respectively. Neither before the making of said record entry nor at any other time has any petition, signed by any party or parties interested in said ditch, been filed with said county surveyor asking for a new allotment thereof, or asking anything whatever. By said new allotment, or re-allotments, the following tracts of land were charged with cleaning out and repairing said ditch, to wit: The said land owned by Hille and Dyer as tenants in common was charged with 3,000 feet thereof in length. The said land owned by Hille individually was charged with 400 feet thereof in length. The land owned by said Dyer individually was charged with 500 feet thereof in length. The land owned by Robert J. Stroud was charged with 3,840 feet thereof in length, "the said Robert J. Stroud having constructed a closed ditch at his own expense of 1,650 feet in length, which was accepted by the county surveyor, and with which 1,650 feet he had been personally charged. No part of said ditch was allotted to Helen Stroud, but the residue of said ditch was allotted in sections of different lengths to twenty-one other parcels of land in said township, held by other persons and corporations." On the 11th day of March, 1901, Charles Hille was given a written notice, of which the following is a copy, to wit: "Notice. Mr. Charles Hille. To whom it may concern: You are hereby notified that I will be at my office on the 26th day of March, 1901, at the hour of 10 a. m., and will, then and there, hear all objections that may be made to my allotments for cleaning out annually and keeping in repair the Long and Duck pond ditch in Union township, Vanderburgh county, Indiana, when and where you can appear and be heard, if you see fit. Dated this 11th day of March, 1901. C. C. Genung, county surveyor." At the same time a like notice was given

to each person affected by said re-allotment, and five public notices to the same effect were posted up in five public places in the township where the lands were situated.

On the 26th day of March, 1901, there was no remonstrance or objection to the said re-allotment, and ten days thereafter said county surveyor entered in the drainage record of said county an order confirming said re-allotment. Said record does not indicate the number of acres in each tract which are benefited by said ditch. Before August 1, 1901, said county surveyor caused to be delivered to said Neale, township trustee, a transcript of said surveyor's record of re-allotments, and made and entered March 26, 1901, and said Neale has notified said Hille to clean out and repair 400 feet in length of said ditch, as fixed by said re-allotments, but said Hille has failed and refused to clean out and repair said 400 feet of said ditch, except 125 feet thereof, and said Neale is now threatening to cause the same to be cleaned out and repaired, and to certify the cost thereof to the auditor of said county, to be placed on the tax duplicate of said county, as a lien upon the land of said Hille.

The facts give rise to the following issues between said Hille and Neale, to wit: The said Hille claims that the said allotments made and entered by said county surveyor December 23, 1899, are valid and remain in full force and effect, and that the re-allotments made and entered by said surveyor March 26, 1901, are void and of no effect; whereas said Neale claims that the re-allotments made and entered by said county surveyor March 26, 1901, are valid and in full force and effect, and that the allotments made and entered by said surveyor December 23, 1899, are void and of no effect.

The agreed case being submitted to the Vanderburgh Circuit Court, that court, as a conclusion of law from the agreed facts, made a finding in favor of John A. Neale, township trustee, that the surveyor's record of March 26,

1901, recorded in Drainage Record No. 1, page 123, was valid, and that the surveyor's record of December 23, 1899, recorded in Drainage Record No. 1, at page 112, was void, and that said Hille was entitled to no relief under the agreed statement of facts, and judgment was rendered against Hille in accordance with said finding.

The errors relied upon for a reversal of the judgment are as follows: (1) The court erred in its conclusions of law upon the agreed facts; (2) in finding for the defendant John A. Neale, trustee; (3) in entering judgment in favor of John A. Neale, trustee, and against Charles Hille.

These assignments of error present substantially the same question, for the reason that the court's conclusion of law upon the agreed facts, its finding for Neale, and its entering judgment in his favor, all depend upon two questions—whether the allotment recorded by the surveyor December 23, 1899, was valid or a void record, and whether the allotment March 26, 1900, was valid or void.

Appellant claims that the allotment made December 23, 1899, was regular and valid because it was made and recorded in the drainage record at the proper time and in the proper form. This claim is based upon §§5632-5634 Burns 1901, §§4284a-4284c Horner 1901, Acts 1889, p. 53. By this statute it was made the duty of the county surveyor to make allotments of shares or portions of the ditches or drains, constructed under and by virtue of any law of this State, to landowners and others designated, to be by them cleaned out annually and kept in repair. By §3 of said act the surveyor was required to reduce the allotments to writing and to record them in the drainage record, and thereupon to cause to be posted up notices of the place where and the time when he would hear all objections to the allotments, a form of notice being set forth in the statute. Provision was made also in said third section for service of a copy of said notice,

as summonses are served, upon each resident owner or occupant of land and others designated. By the fourth section the surveyor was required to be present at the time. and place mentioned. in the notice, and to hear all objections made to such allotments; and, after hearing all objections offered, he was required to confirm or change the allotments as justice might require, and to enter an order accordingly, such order to be final and conclusive upon all parties interested, unless appealed from in ten days thereafter.

In *Beatty* v. *Pruden,* 13 Ind. App. 507, it was held that it was the intention of the legislature to provide in said section the service of personal notice by copy upon the resident landowners and others designated; and where the only notice given of the allotment was by the posting up of written notices in the form prescribed by statute, and by serving a copy thereof on the township trustee and resident landowner, to whose land a portion of the ditch was apportioned, the landowner was not bound by the proceedings of the surveyor, which were void, because of want of jurisdiction.

In the allotment of said December, 1899, the surveyor did not give nor attempt to give any notice of any kind, nor did he provide a time and place for remonstrances and objections, nor did he enter an order upon the record confirming said allotment. He therefore had no jurisdiction, and the allotment was void and subject to collateral attack. An entry upon the surveyor's record was therefore without jurisdiction and necessarily void.

Appellants argue that the allotment was so far regular that it might be made perfect by subsequent notice to the landowner, where he had no knowledge of the allotment when it was entered, under the act regulating the duties of county surveyor (Acts 1897, p. 137, §5634a *et seq.* Burns Supp. 1897). By said act of 1897 it was provided that in all counties where county surveyors failed to give

personal notice to the respective landowners of the allotting of any ditch over which such surveyors had supervision under the statute of 1889, and ditch allotments for cleaning and repairing were by them made, they should give personal notice to the landowners of the land affected by such allotments, the form of the notice to be the same as that prescribed in said §3 of the act of 1889; and that if the landowner should fail to appear before the surveyor at the time and place prescribed in the notice, and present his objections to his allotment, or if, upon presenting his objections, the surveyor should hold against him and adjudge his allotment to be right and equitable, then the allotment should be finally established as previously determined, and he should be required to perform the work allotted to him, "the same as though personal notice had been given him in the first event, and as though there was no irregularity therein," subject, however, to his rights of appeal. It was provided in §2 that the act should not be construed to give the surveyor power and authority to re-allot the repairing and cleaning of ditches and making of records as is prescribed in said act referred to in the preceding section, but that he is only to perform such duties as are required of him after the giving of notice as is prescribed in the aforesaid act.

The preamble of the act of 1897, *supra,* reads: "Whereas, a large number of county surveyors throughout the State of Indiana failed under §5634 of Burns' Revised Statutes of 1894, to give personal notice to landowners in their respective counties, where and at what time said surveyors would hear objections that might be made to the ditch allotments for repairing and cleaning ditches made by him under said law; and, whereas, the Supreme Court of the State of Indiana have decided that such personal notice is necessary in order to bind the landowner to perform the work given to him, by said surveyor under said allotment," etc. Said preamble and

the text of the act indicate that it applies only where there was an attempt to give the requisite statutory notice, and not where the facts show that no notice of any kind was attempted to be given, as in the case before us.

Appellant points out that immediately after the allotment was so made and recorded, to wit, in the early part of the year 1900, the township trustee procured a transcript of the said allotment, adopted and acted upon the same, and thereupon duly notified the landowners interested in said allotment to clean out and repair said ditch in accordance therewith; that the landowners acquiesced in and adopted said allotment by proceeding to clean out and repair said ditch as required by said allotment, and completed the entire work prior to December 1, 1900; and that by the act of 1897, *supra,* this notice is made to take the place of the omitted notice, and operates like the *nunc pro tunc* order of the court. This court has held in *Board, etc.,* v. *Trotter,* 19 Ind. App. 626, adversely to this claim of the appellants. The voluntary acquiescence for the time being of landowners in invalid requirements can not bind them for the future as to void allotments.

On March 26, 1901, the county surveyor made and entered in his record what he called "re-allotment for cleaning out and repair of the Long and Duck pond ditch." On March 11, 1901, the plaintiff (appellant) was served with a written notice to appear at the surveyor's office on March 26, 1901, and make any objections he had to the surveyor's allotment. At the same time like notices were given to the other interested landowners, and five notices were posted in public places in the township wherein the lands affected by the ditch are situated. On the 26th day of March, 1901, there was no remonstrance or objection to the said so-called re-allotment, and ten days thereafter the county surveyor entered in his drainage record an order confirming said so-called re-allotment.

In making this allotment the surveyor followed the provisions of the statute. Appellants claim that this allotment is void. The first reason given is that no re-allotment could be rightfully made until two years after the time the original allotment was made, which was December 23, 1899. Second, the attempted re-allotment could not be legally made by the surveyor without a petition signed by one-half of the parties interested in the re-allotment, and no such petition was ever filed.

In support of these reasons §5643 Burns 1901, §42841 Horner 1901 is cited. Said section provides that at any time after two years from the time any allotment of any ditch is made under this act, a petition signed by one-half of the parties interested in said allotment, stating that said allotment is unfair and asking for a new allotment, is filed with the county surveyor, the said county surveyor shall proceed to examine said ditch, and if he finds the allotment to be unfair or unjust he shall proceed to reapportion said ditch as though no previous allotment had been made, but if he finds no cause for complaint he shall so report to the county auditor, who shall tax all costs in the proceedings to the persons signing said petition, and said costs shall be collected as other taxes are collected. Section 5633 Burns 1901 provides that as soon as the ditch is constructed the county surveyor shall make an allotment for the cleaning and repairing of said ditch; but said section contains this proviso: "That where ditches were originally allotted for construction by reviewers appointed by the board of county commissioners, the allotments shall remain the same for repairs under this act, unless the majority of the parties assessed shall petition the surveyor for reapportionment."

This ditch was not allotted for construction by reviewers appointed by the board of county commissioners, and the proviso has no application, and it was the surveyor's duty under §5633, *supra,* to make the allotment. He

attempted to do this on December 23, 1899. This allotment we have held was void. When, in March, 1901, he again attempted to make an allotment, there was no legal allotment in existence, and §5643, *supra,* that provided that after two years from the time the allotment is made such allotment can be changed by the surveyor upon petition signed by one-half of the parties interested in such allotment, has no application. Whether the notice served upon appellee spoke of an allotment or re-allotment could make no difference, because, upon appellant's theory that the action of December 23, 1899, came within the act of 1897, *supra,* such allotment could be changed, as he knew, upon the final hearing.

By naming the action of December, 1899, "an allotment" the surveyor could not make it valid in the absence of jurisdictional requisites. He could not make invalid the act of March 26, 1901, by conferring upon it a wrong name. The proceedings of March 26 were called a "re-allotment" in the record. In the notice served upon the appellant they were called an "allotment." The name given a particular act does not determine its legal effect. The law determines what the facts stated constitute. When the notice matured March 26, 1901, an "allotment" and a "re-allotment" appear on the record of the surveyor. The notice recited that the surveyor called attention to the allotment alone, so that in the condition of the drainage record the appellant contends that the notice only applies to the "re-allotment." Citing *Southern Pac. Co.* v. *Block,* 84 Tex. 21, 19 S. W. 300; *Fanning* v. *Krapfl,* 61 Iowa 417, 14 N. W. 727, 16 N. W. 293; *Bertoulin* v. *Bourgoin,* 19 La. Ann. 360.

In the first of the above cases a citation was issued against the Southern Pacific Railway Company. The return of the sheriff showed service on the Southern Pacific Company. Plaintiff filed an amendment designating defendant as the Southern Pacific Company. This amend-

ment was not served, and judgment was rendered against the Southern Pacific Company by default. Held that the name of the plaintiff in error as defendant was not stated in the citation. The Southern Pacific Railway Company and the Southern Pacific Company could not be regarded as identical. In *Bloomfield R. Co.* v. *Burress,* 82 Ind. 83, the objection to the complaint was that it showed upon its face that the judgment sought to be enforced was not recovered against the appellant. The appellant averred that the judgment was recovered against the appellant, but by the wrong name. It was held that it did not affect its validity. If a party is sued by a wrong name, is served with process, and fails to plead the misnomer in abatement, the judgment will bind him. The two cases are in conflict, and the Indiana case must govern.

In *Fanning* v. *Krapfl, supra,* the real name of the defendant was T. Phelia Boyd Hopkins. The service of the notice was by publication and the published notice was addressed to P. B. T. Hopkins. It was held that the transposition of the initials of the Christian name of the defendant made the notice of no effect as to her, and gave the court no jurisdiction to render a decree against her.

In *Morgan* v. *Woods,* 33 Ind. 23, it is held that the introduction of a wrong initial letter between the Christian name and the surname of plaintiff in the publication of notice of the pendency of a proceeding in attachment does not render the proceeding under such notice void, but simply erroneous, and, until reversed by an appellate court, the judgments proceeding under it are effective and conclusive between the parties.

In *Bertoulin* v. *Bourgoin, supra,* after a default had been taken, a definitive judgment was rendered against Mrs. Bertoulin. The citation was addressed, not to the defendant, but to Mrs. Bertoulin. The court held that

under the Louisiana code the citation was defective, and that it should have been addressed in the name of the defendant. It is presumed that the wording of the code supports the decision, but in the event of conflict, as above stated, the Indiana cases must control.

Recurring to the claim of appellant that as the notice recited that objections would be heard to, not a re-allotment, but the allotment, and as the allotment of December 23, 1899, was the only one that had been made and as no new allotment or re-allotment could be made before December 23, 1901, therefore the notice could only have referred to the allotment of 1899. We deem it proper to add to what we have heretofore said, that the appellant and the surveyor are held to know the law; to know that there could be no valid allotment until the surveyor had acquired jurisdiction over him in that behalf, even if, as contended, the action of December 23 came within the provisions of the curative act of 1897, *supra*. Whether the notice spoke of an allotment or re-allotment would make no difference, being such allotment as could be changed by the surveyor on the day set for hearing objections. And the appellant would be bound by such change. Besides, the surveyor had no authority to confer names upon his acts, and can not affect the result of an act by designating it by a particular name.

Various other points in support of the claims of the respective parties are ably presented in the briefs with which counsel have favored the court, and numerous pertinent cases cited in connection therewith, which we have considered but have not deemed it necessary, in the view taken of the issue, to discuss in this opinion.

Judgment affirmed.