Harry B. DULICK et al., Plaintiffs in Error,
v.
OKLAHOMA CITY, a Municipal Corporation,
et al., Defendants in Error.

No. 39587.

Supreme Court of Oklahoma.

Nov. 21, 1961.

As amended Nov. 22, 1931 and April 17, 1962.

Rehearing Denied April 17, 1962.

Suits & Weiss, Fred E. Suits, Mary L. Weiss, Oklahoma City, for plaintiffs in error.

Edward H. Moler, Roy H. Semtner, Oklahoma City, for defendants in error.

W. J. Ivester, Altus, Herbert D. Smith, Alva, Andrew B. Riddle, Jr., Ardmore, Chester A. Brewer, Bartlesville, Robert H. Loofbourrow, Boise City, Jerome Sullivan, Duncan, Donald Royse, Elk City, H. L. Gasaway, Enid, Don Dale, Guymon, Walter J. Arnote, McAlester, Andrew Wilcoxen, Muskogee, John M. Luttrell, Norman, Haskell Paul, Pauls Valley, Carl A. Rizley,

Sayre, Charles E. Norman, Tulsa, Walter Hubbell, Walters, amici curiae.

BLACKBIRD, Vice Chief Justice.

Plaintiffs in error, hereinafter referred to as plaintiffs, instituted this action on December 2, 1960, alleging, inter alia, in substance, that they were owners of real estate in College Park Addition to Oklahoma City; that defendants in error, hereinafter referred to as defendants, had attempted to create a water distribution system known as Water Assessment District No. 2, for said Addition, and would, unless enjoined by the court, let a contract on December 6, 1960, for the construction of such a system, costing $291,319, and then proceed to construct such improvement, and assess its costs against the property of the plaintiffs, and others similarly situated, without ever having given such property owners the personal notice required by Tit. 11 O.S. 1959 Supp. § 330.7. Plaintiff further alleged in substance, that this would constitute a taking of property without due process of law, in violation of Oklahoma Statutes and the Oklahoma and United States, Constitutions.

To properly understand the issues herein it is well to examine both the pertinent parts of section 330.7 and other provisions following it under the same title of the 1959 enactment. They read as follows:

"§ 330.7. Whenever the governing body shall deem district distribution lines necessary, it may proceed with such work without the petition hereinbefore provided for, and shall cause to be prepared by the city or town engineer or other registered professional engineer plans, profiles, and specifications for the work, together with a complete estimate of the costs and an assessment plat covering the area. * * *

"Upon the completion of the plans, specifications and assessment plat and their adoption by the governing body, it shall *advertise for sealed bids* for the performance of such work, for at least two (2) consecutive Thursday issues, if published in a daily newspaper, or at least two (2) consecutive issues if published in a weekly newspaper, which paper shall be of general circulation in the city, and which notice may contain any reasonable conditions to be imposed by the governing body with reference to the letting of such contract, and may require the giving of a good and sufficient bond for the faithful execution of the work, and for the protection of the municipality and all property owners against any loss or damage by reason of the negligent execution of such work. *The notice shall also advise all parties interested that they may appear and protest against said proposed improvements.* Such notice shall provide that if the owners of more than one-half (½) in area of the land liable to assessment to pay for such improvement shall not within ten (10) days after the last publication of such notice file * * * their protest in writing against such improvement, then the municipality shall have the power to cause such improvement to be made and contract therefor and to levy assessments for the payment thereof. Provided if any water distribution line is protested by the owners of more than fifty per cent (50%) of the land liable to assessment for payment of costs of constructing said water distribution line, the same shall be eliminated from such district and the governing body of said city or town shall not advertise the same again for a period of six (6) months, except upon petitions as heretofore provided, but the proceedings may be continued as to the remainder of said district. Any person, firm, corporation, administrator or guardian holding the title to said lands liable to assessment may enter such protest or objection. *On or before the date of the first publication hereunder, the clerk shall notify each listed owner of land as shown*

*by the current year's tax rolls* in the County Treasurer's office, *said list to be furnished by the engineer, by mailing a postal card directed to said owner at his last known address as shown by said ownership list,* stating the initiation of the proceedings and that the property, describing it, *will be liable to assessment* to pay for the improvement, naming the newspaper and the issues thereof in which the resolution prescribed by this Section is to be published and referring the owner to such publication for further particulars. If several tracts are owned by the same person, all may be included in the same notification. Proof of such notification may be made by affidavit of the clerk. *However, this notification shall not be a jurisdictional requirement, and the omission thereof or the failure to mail a notice to any property owner shall affect in nowise the validity of the proceedings for the formation of said district.* The finding of the governing body as to the sufficiency or insufficiency of the protest shall be conclusive and binding for all purposes and against all persons * * *. *At the [same] time and place specified in the notice,* which shall not be less than ten (10) days nor more than thirty (30) days after the last publication of said notice, *the governing body shall open and consider said bids* and shall within a reasonable time thereafter, *if it finds such improvements necessary and proper, award the contract to the lowest and best bidder for the work,* * * *.

"§ 330.8. *As soon as any district distribution line or lines shall have been completed, the city or town engineer, or other* registered professional engineer having charge of the work, shall compute the whole cost thereof, which shall also include the cost of advertising, appraising, engineering, the necessary easements and right-of-way and such other expenses that are necessary or essential to the completion of said work, and payment of the costs thereof, and *shall apportion* the *same against all of the lots or pieces of ground in such district according to benefits,* and such officer shall forthwith file a written report of such cost and apportionment thereof with the city or town clerk. Laws 1959, p. 38, § 8."

"§ 330.9. *When said report is filed, the governing body shall appoint a time for holding a session to hear any complaints or objections that may be made concerning said apportionment* as to any of such lots. *Notice of such hearing shall be published* by the city or town clerk in five (5) consecutive issues of a daily newspaper, or two (2) consecutive issues of a weekly newspaper published in the county and of general circulation in said city or town, *and a copy of such notice shall be mailed* by the city or town clerk at least ten (10) days before such session *to the owners of property chargeable with the cost of said improvement* at their addresses as shown by the current year's tax rolls in the County Treasurer's office. The time fixed for said hearing shall be not less than five (5) nor more than twenty (20) days from the last publication. *The governing body of any city or incorporated* town at said session or any adjournment thereof *shall have the power to review and correct said apportionment and to raise or lower the same* as to any lots or tracts of land, as they shall deem just, and shall, by resolution, confirm the same as so revised and corrected by them.

"At or prior to said session, any person, firm or corporation may file objections in writing against the validity or amount of any proposed assessment, specifically setting forth the nature thereof, and shall have full opportunity to be heard thereon; and said governing body shall adjudicate and determine said objections and shall make such

order as may be just and proper. Any objections to the regularity of the proceedings with reference to the making of the improvement or the validity or the amount of any assessment shall be deemed waived unless presented at the time and in the manner herein specified. And no action or suit to question the acts or actions of said governing body shall be commenced later than fifteen (15) days after the dates thereof.

"The determination by the governing body of the property to be assessed and of the amount of benefits shall be conclusive upon the owners of the property assessed and shall not be subject to review by any court. Laws 1959, p. 38, § 9." (Emphasis ours.)

By the time defendants had filed their answer (according to the allegations thereof) five bids for the construction of the water system, lower than the engineers' estimate, had already been received; and defendants admitted that, unless prevented by the court, they contemplated entering into a contract for its construction.

At the trial it was agreed that the advertisement for bids and "notice" first prescribed in section 330.7, supra was published as therein required, but that no postal card, as provided therein, or other written notice, was mailed to the "listed" owners of property.

Upon consideration of briefs submitted by the parties at the close of the trial, the court rendered judgment for defendant, denying the injunction sought by plaintiffs, and dismissing their petition. The court reflected his interpretation of the above-quoted sections of the statute in certain conclusions incorporated in the journal entry of his judgment, in material substance, as follows:

That the only notice to owners required by section 330.7 before taking bids for construction of a water system, is the published "notice" and advertisement for said bids; that the right of

said owners to appeal and protest is based on that notice alone; that said section's provision that failure to give the post card notice "shall affect in nowise the validity of the proceedings for the formation of the district" removes such notice "from the mandatory class", and "amounts to merely a suggestion" which, if not followed, "is not fatal to the validity of the formation of the improvement district * * *"; and that the property owners are afforded due process of law without it.

In this appeal from said judgment, plaintiffs contend the trial court erred in refusing to enjoin proceedings they consider invalid, because the above-described "postal card" notice was not given. They use most of their argument in attempting to show they (and other property owners similarly situated) were entitled to such notice, because, without it, they were not afforded due process of law, according to court decisions they cite.

In answer to this, defendants argue (as the trial judge apparently believed) that, under section 330.7, supra, there is a distinction and line of demarcation between proceedings for the formation of a water district, and proceedings for the assessment of its costs against its property owners; that the cited statute provides sufficient notice, by publication only, for the former; and that it is only as to the hearing prescribed in the first paragraph of section 330.9, supra, that notices must be mailed to the owners, in order to afford them due process.

It is unnecessary for us to concur precisely with all of the arguments by either party. In our opinion, the problem here is principally, and primarily, one of construing section 330.7, supra, and ascertaining, from its wording, the intention of the Legislature in enacting it—irrespective of the question of due process, and before, or without reaching any, consideration of that subject.

Both sides recognize the general rule that, in such matters, the statute is controlling.

Therefore, if defendants' manner of proceeding in the present case was not in accord with the statute, it was defective; and they should be enjoined from continuing it, and letting a contract on the basis thereof, even though plaintiffs have been afforded due process and would have no predicate upon which to set aside, on jurisdictional grounds, assessments made against their property to pay for construction of the water system, after they were made, and/or the construction had been accomplished.

The arguments on both sides fail to recognize the distinction between proceedings that are in "substantial compliance" with the statute, and those in which no effort has been made to comply therewith. The distinctions, for jurisdictional purposes, between "substantial compliance", and complete non-compliance, and between irregularities that may only be raised on direct attack, and fatal jurisdictional defects that may be raised on both direct and collateral attack, are familiar ones in the law, and in the writing of laws. (In this connection, notice Thomas v. Tucker, 184 Okl. 304, 86 P.2d 1011, 1012, and Jones v. Standard Lumber Co., 121 Okl. 186, 249 P. 343, quoting Freeman on Judgments and 33 Corpus Juris). It is reasonable to believe that the Oklahoma Legislature was cognizant of such considerations in writing into sec. 330.7, supra, the subject provisions, that might otherwise appear inconsistent or conflicting. While no case exactly like the present one has come to our attention, the principles, to which we refer, are reflected in Alford v. Kerbo, 186 Okl. 334, 98 P.2d 614, 618, and Prezinger v. Harness, 114 Ind. 491, 16 N.E. 495, 498, quoted in the Annotation at 9 A.L.R. 842, 892. In the cited Oklahoma case, this court said:

"The difficulties * * * in obtaining proper service of notice under the earlier statutes as shown in the early Indiana cases, doubtless led to the liberalization of the provisions for notice in the later statutes. Experience apparently had taught that in many cases it was difficult if not impossible to learn and set out the names of *all* persons who were actual owners of the land involved. Necessity apparently called for some provision for notice to owners whose names could not be ascertained with certainty or where through mistake, neglect or misinformation the wrong party might be named as owner of land to be affected, and thus avoid the assessments after the drains had been constructed. * * *." (Emphasis ours.)

And in the cited Indiana case, the court said:

"There is a fundamental difference, however, between proceedings had without any notice, and those which follow a defective or insufficient notice; between no notice at all, or notice by a wrong, incomplete, or defective name; and equally radical is the distinction between an attempt to arrest proceedings that may be void * * * before the work which the proceedings direct is completed * * * and an attempt to have them adjudged void after the work has been fully completed. Where the jurisdiction of a court, whether it be a court of limited or general jurisdiction, depends upon the sufficiency and validity of a certain notice or process which it passes upon and holds sufficient, although the decision be entirely erroneous, the proceedings which follow are not on that account void, but are, when questioned collaterally, binding upon all those affected by the judgment finally rendered, to whom there was an apparent attempt made to give notice."

For a related case notice Hille v. Neale, 32 Ind.App. 341, 69 S.E. 713.

In accord with the foregoing, we hold that the present action is a direct (as

**540**

distinguished from a collateral) attack on the validity of the formation of the Water District involved; that the provision of section 330.7, supra, for postal card notice to property owners is more than a legislative "suggestion"; that it is mandatory; and that plaintiffs had a valid cause of action because of the admitted, complete failure to comply with it. The trial court should have granted the injunction. His interpretation of the statute, advocated by defendants in this appeal, would render that provision meaningless and a nullity, and thus do violence to a well-recognized principle of statutory construction. See Simmons v. Benson, 206 Okl. 539, 244 P.2d 1126.

There is a marked difference between the statutory provision involved in this case, and the one involved in Jungels v. Town of Hennessey, 202 Okl. 619, 217 P. 2d 167. The provision there questioned stated that failure to mail the notices it prescribed " * * * shall not invalidate any of the proceedings * * *". As that was a legislative declaration of such broad reference-the expression "shall not invalidate" having, in at least one case, been interpreted as synonymous with "shall not affect or in anywise impair." (see Eddy v. London Assur. Corp., 143 N.Y. 311, 322, 38 N.E. 307, 309, 21 L.R.A. 686, 689)—there was good reason for this court's conclusion there that the provision was " * * * directory and not mandatory".

The judgment of the trial court is therefore reversed, and this cause is remanded to said court with directions to vacate the judgment appealed from, and enter judgment granting the injunction.

WILLIAMS, C. J., and WELCH, DAVISON, HALLEY, JOHNSON, JACKSON and BERRY, JJ., concur.